UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLIFFTON ROE,

    Plaintiff / Counter-Defendant,

v.

    Case No. 14-CV-13790

    HON. MARK A. GOLDSMITH

NANO GAS TECHNOLOGIES, INC.,

    Defendant / Counter-Plaintiff.

_____/

**OPINION AND ORDER
(1) DENYING DEFENDANT'S MOTION FOR A TEMPORARY RESTRAINING
ORDER, A PRELIMINARY INJUNCTION, AND AN ORDER FOR POSSESSION
PENDING FINAL JUDGMENT (CLAIM AND DELIVERY) (Dkt. 3); (2) GRANTING
DEFENDANT'S MOTION TO DISMISS (Dkt. 12); (3) DENYING DEFENDANT'S
MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL BRIEF (Dkt. 46); (4)
DENYING DEFENDANT'S MOTION TO HOLD PLAINTIFF IN CIVIL CONTEMPT
OF COURT (Dkt. 59); (5) DENYING DEFENDANT'S MOTION FOR A DISCOVERY
CONFERENCE AND TO COMMENCE DISCOVERY (Dkt. 61) AS MOOT; AND (6)
DISMISSING CASE WITHOUT PREJUDICE**

**I. INTRODUCTION**

In this breach-of-contract case based on the Court's diversity jurisdiction, Plaintiff Cliffton Roe alleges that Defendant Nano Gas Technologies, Inc. materially breached a Collaboration and Non-Compete Agreement ("Agreement"), for which Plaintiff is seeking injunctive relief. Defendant has filed a counterclaim against Plaintiff, alleging that Plaintiff breached the Agreement, as well as raising other numerous claims.

This matter is presently before the Court on Defendant's motion for a temporary restraining order ("TRO"), a preliminary injunction, and an order for possession pending final judgment (claim and delivery) (Dkt. 3) (hereinafter "motion for injunctive relief"), as well as Defendant's motions to dismiss (Dkt. 12), to strike Plaintiff's supplemental brief (Dkt. 46), to

1

hold Plaintiff in civil contempt of court (Dkt. 59), and to conduct a discovery conference and commence discovery (Dkt. 61).

For the reasons explained fully below, the Court finds that the mediation and arbitration clause in the Agreement covers the parties' dispute, and neither party is entitled to pursue injunctive relief pursuant to the express terms of the arbitration clause. Therefore, the Court denies Defendant's motion for injunctive relief, grants Defendant's motion to dismiss, denies Defendant's motion to strike, denies Defendant's motion to hold Plaintiff in civil contempt of court, and denies, as moot, Defendant's motion for a discovery conference. Having determined that all the claims in this case should to be submitted to arbitration, the Court dismisses this case without prejudice.

## II. BACKGROUND

On March 21, 2013, Plaintiff and Defendant entered into a Collaboration and Non-Compete Agreement. Compl. ¶ 6 (Dkt. 1); Agreement at 11-14 (cm/ecf pages) (Dkt. 1). Alleging numerous material breaches of the Agreement, Plaintiff filed suit against Defendant on October 1, 2014, seeking to enjoin Defendant from "using, disseminating, or making application for a patent to the United States Patent and Trademark Office" regarding "a new technology that dissolves or disperses gasses into liquids which stay dissolved or dispersed at standard temperature and pressure which would modify Henry's Law." Compl. ¶¶ 1, 6, 8, 19, 21, 23, 28, 35, 39(a)-(b). According to Plaintiff, he invented this technology prior to the effective date of the Agreement. Id. ¶¶ 1, 9.

On October 10, 2014, Defendant filed a counterclaim against Plaintiff (Dkt. 5), alleging that, sometime between August 29, 2014 and September 15, 2014, Plaintiff entered Defendant's facilities in Michigan and "appropriated, converted, and sequestered" Defendant's property.

Counterclaim ¶ 19.  Defendant brought claims against Plaintiff for breach of contract, as well as common-law and statutory conversion, breach of fiduciary duty, misappropriation of trade secrets, and the intentional interference with Defendant's existing and prospective economic relationships.  Id. ¶¶ 27-54, 63-77.  Defendant also sought claim and delivery, as well as injunctive relief.  Id. ¶¶ 55-62, 78-83.  In addition to filing its counterclaim on October 10, 2014, Defendant also filed a motion for a TRO, a preliminary injunction, and an order for possession pending final judgment (claim and delivery) (Dkt. 3), and a motion to dismiss (Dkt. 12).

That same day, the parties entered into a stipulated TRO, whereby the parties agreed to refrain "from damaging, destroying, concealing, disposing of, or using so as to substantially impair the value of the property of Nano . . ., including the property Nano . . . alleged is the property of Nano . . . in the pleadings and in Nano['s] motion and brief in support of a temporary restraining order."  10/10/2014 Stip. Order at 1 (cm/ecf page) (Dkt. 16).  The parties agreed that this stipulated order would remain in effect until the Court resolves Defendant's motion for injunctive relief.  Id.

A hearing on Defendant's motions was held on November 24 and 25, 2014.  At the Court's request, the parties submitted post-hearing supplemental briefs (Dkts. 42, 44).  While Defendant timely filed its supplemental brief, Plaintiff's supplemental brief was filed two days after the deadline set by the Court.  Thereafter, Defendant filed a motion to strike Plaintiff's supplemental brief as being untimely (Dkt. 46).

Since the hearing, Defendant has filed two more motions — one alleging that Plaintiff violated the stipulated TRO (Dkt. 59), and the other requesting a discovery conference and to commence discovery (Dkt. 61).

### III.  STANDARDS OF DECISION

The standard for a preliminary injunction is well known: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Typically, no one factor is dispositive; rather they are to be considered as an integrative whole. Liberty Coins, L.L.C. v. Goodman, 748 F.3d 682, 690 (6th Cir. 2014) ("Each of these factors should be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." (quotation marks and brackets omitted)). "These same factors are utilized in evaluating whether to issue a temporary restraining order." Coleman v. Ann Arbor Transp. Auth., 904 F. Supp. 2d 670, 680 (E.D. Mich. 2012) (citing Ohio Republican Party v. Brunner, 543 F.3d 357, 361 (6th Cir. 2008)).

In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief." Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010) (quotation marks, brackets, and citations omitted). To survive a motion to dismiss, a complaint must plead specific factual allegations, and not just legal conclusions, in support of each claim. Ashcroft v. Iqbal, 556 U.S. 662, 678–679 (2009). A complaint will be dismissed unless, when all well-pled factual allegations are accepted as true, the complaint states a "plausible claim for relief." Id. at 679.

The Federal Arbitration Act "provides that arbitration clauses in commercial contracts 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Bishop v. Gosiger, Inc., 692 F. Supp. 2d 762, 767 (E.D. Mich. 2010) (quoting 9 U.S.C. § 2). If an arbitration clause covers the cause of action, the court

4

must stay the proceedings pending the completion of arbitration. Id.; 9 U.S.C. § 3. Furthermore, "even though a Court may not compel arbitration in a foreign jurisdiction, it may stay the litigation pending arbitration in the chosen forum." Bishop, 692 F. Supp. 2d at 767.[1] However, if all of the claims are arbitrable, the court may dismiss the action. Id. (citing Hensel v. Cargill, Inc., 198 F.3d 245 (6th Cir. 1999) (unpublished)); see also Green v. G. Reynolds Sims & Assoc., P.C., No. 12-12488, 2013 WL 1212775, at *4 (E.D. Mich. Mar. 25, 2013) (recognizing that, "when the court determines that all the claims in a cause of action are to be submitted to arbitration, it may dismiss, rather than stay the action because 'staying the action will serve no purpose'" (quoting Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992))); Prude v. McBride Research Labs., Inc., No. 07-13472, 2008 WL 360636, at *7-8 (E.D. Mich. Feb. 8, 2008) (dismissing action without prejudice, where all claims were to be submitted to arbitration, and staying the action and retaining jurisdiction would serve no purpose).

## IV. ANALYSIS

At the outset, the Court recognizes that there is a presumption of arbitrability when an agreement contains a broadly worded arbitration clause, such that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B., 501 U.S. 190, 209 (1991) (brackets and quotation marks omitted); Huffman v. Hilltop Cos., LLC, 747 F.3d 391, 395 (6th Cir. 2014) (same). The Sixth Circuit has described an arbitration clause as being "broad" when the clause indicates that any claim or dispute "arising out of or relating to" that agreement will be submitted to arbitration. See Huffman, 747 F.3d at 395. The Huffman court further noted that,

---

[1] In this case, the Agreement states that "[a]ny dispute arising out of or relating to this Agreement . . . shall be settled by arbitration in Chicago, Illinois." Agreement at 13 (cm/ecf page) (Dkt. 1).

given the strong federal policy in favor of arbitration, any doubts as to the parties' intentions or any contractual ambiguities should be resolved in favor of arbitration. Id.

In this case, section 15 of the Agreement contains a broadly worded arbitration clause. This section, which also addresses the limited circumstances in which injunctive relief may be sought from a court notwithstanding the arbitration clause, provides the following:

> 15. DISPUTE RESOLUTION. Any dispute arising out of or relating to this Agreement, including its formation ("Dispute") shall be resolved by mediation and then arbitration in the following manner; provided, however, that injunctive relief may be sought in any court of competent jurisdiction with respect to Sections 2, 3, 8 and 9, which relief may be effective during the pendency of proceedings brought pursuant to this Section 12 [sic]. . . .  The proceedings and decision of the arbitrator shall be final, non-appealable, binding and confidential, except as necessary for enforcement of the decision . . . which may include equitable, injunctive and/or monetary relief as well as any other remedy available at law or equity, which may be enforced in any court of competent jurisdiction.

Agreement at 13 (cm/ecf page) (Dkt. 1) (emphasis added).

Thus, according to the express terms of section 15 of the Agreement, injunctive relief may only be sought "with respect to Sections 2, 3, 8, and 9." Id. at 13 (cm/ecf page). Those sections of the Agreement provide the following:

> 2. JOINING THE TEAM. Cliff agrees to join the Team and shall contribute his intellectual property and know how relating, pertaining to or touching upon the Technology. This intellectual property embodied in the Technology includes, but is not limited to, technology for dissolving gasses into liquids, creating a machine for this purpose, and other devices for treating water, other applications and/or furthering the basic science. The Team will work together with respect to the possibility of sales, marketing, manufacturing, distribution, services, and capital funding for Nano Gas (a "Proposed Transaction") and in connection therewith will enter into confidential discussions, negotiations and/or agreements involving such Proposed Transaction (a "Business Purpose"). In order to pursue the Proposed Transaction, each Party as a Disclosing Party will be

> disclosing certain confidential information to the other Party a Receiving Party. The parties therefore recognize the need to maintain the confidentiality of such information from unauthorized use and disclosure, by or to any third party, without the prior written consent of Nano Gas.
>
> 3. NONCOMPETE COVENANT. For a period of the greater of:
>    a. six (6) months (Initial Term), or
>    b. while Cliff continues to receive a salary, and for four (4) months thereafter, whichever is longer;
>
> after the effective date of this Agreement, Cliff will not directly or indirectly engage in any business that competes with Nano Gas in the U.S. or worldwide. During the Initial Term, Nano Gas will make good faith efforts to raise capital needed to fund start up of the company, build demo machines, establish a laboratory for Cliff, and pay salaries.
>
> 8. USE OF FUNDING. Nano Gas will use initial founder investment to cover out of pocket expenses and build an initial demo machine. Subsequently, Nano Gas will raise additional capital to support a laboratory for use by Cliff. The remaining capital will be used to pay salaries and other uses at the company discretion.
>
> 9. MACHINE DESIGN. As CTO, Cliff will be primarily responsible for machine design and will be consulted with in respect to any changes of the design of the machine.

Id. at 11-12 (cm/ecf pages).

The Agreement also contains another section on injunctive relief:

> 16. INJUNCTION. It is agreed that if Cliff violates the terms of this Agreement irreparable harm will occur, and money damages will be insufficient to compensate Nano Gas; and Cliff specifically waives claiming any such response. Therefore, Nano Gas will be entitled to seek injunctive relief (i.e., a court order that requires Cliff to comply with this Agreement) to enforce the terms of this Agreement, without bond or notice, as notice of seeking such injunction could reasonably be expected to precipitate the actions sought to be enjoined.

Id. at 14 (cm/ecf page).

Before the Court can determine whether either party is entitled to injunctive relief, the Court must first determine whether the parties are entitled to seek their requested injunctive relief from the Court pursuant to section 15 of the Agreement. If the parties' respective injunctive claims do not relate to one or more of the four specified sections above, the arbitration clause will control any dispute "arising out of or relating to" the Agreement.

### A. Plaintiff's Claim for Injunctive Relief

In his complaint, Plaintiff seeks to enjoin Defendant from "using, disseminating, or making application for a patent to the United States Patent and Trademark Office" regarding "a new technology that dissolves or disperses gasses into liquids which stay dissolved or dispersed at standard temperature and pressure which would modify Henry's Law." Compl. ¶¶ 1, 6, 8, 19, 21, 23, 28, 35, 39(a)-(b). In support of its motion to dismiss, Defendant contends that Plaintiff's "exclusive remedy in connection with [his] particular claims is the alternate dispute resolution provision" provided for in section 15 of the Agreement. Def. Br. at 3 (Dkt. 13). While recognizing that section 15 excepts from arbitration certain types of injunctive relief, Defendant argues that Plaintiff's claims relate only to section 10,[2] which deals with the assignment of the disputed technology. Id. at 4-5.[3] The Court agrees with Defendant.

---

[2] Section 10 of the Agreement provides, in pertinent part, that "Cliff shall be named as the inventor for any patents filed using his know how, designs, or inventions encompassed in the Technology. In exchange for the above consideration, Cliff hereby assigns all of his rights, title and interest in and to intellectual property relating in any way to the Technology to Nano Gas." Agreement at 12 (cm/ecf page).

[3] Although Plaintiff initially argued that his complaint sufficiently alleged an exception to the Agreement's arbitration clause, see Pl. Resp. to Mot. to Dismiss at 5-9 (Dkt. 23), Plaintiff appears to have abandoned this position both during and after the hearing, suggesting that this case should be sent to mediation and arbitration. See 11/25/2015 Hr'g Tr. at 135 (Dkt. 54) (Plaintiff's counsel agreeing that arbitration of this matter "would be appropriate"); Pl. Supp. Br. at 4, 6, 9 (Dkt. 44) (noting that Plaintiff "has made demand for mediation, which Nano Gas has flat out ignored," that the issue of ownership and possession of certain personal property is "a

Even accepting Plaintiff's factual allegations as true and construing the complaint in the light most favorable to Plaintiff, Plaintiff's claim for injunctive relief does not relate to any of the four sections identified in section 15 of the Agreement. An injunction prohibiting Defendant from applying for a patent or from using or disseminating certain technology does not implicate the non-compete clause, the Defendant's proposed use of funding, or the design of the machine itself. Nor does the requested injunction relate to section 2 of the Agreement, because Plaintiff is not seeking to have himself rejoin "the Team," contribute his intellectual property to Defendant, or work together with Defendant "with respect to the possibility of sales, marketing, manufacturing, distribution, services, and capital funding" for Defendant. Agreement at 11 (cm/ecf page).

Consequently, Plaintiff's claims that Defendant materially breached the Agreement are governed by the arbitration clause, as these claims undoubtedly constitute a dispute "arising out of or relating to" the Agreement. Id. at 13 (cm/ecf page). Because Plaintiff's claim for injunctive relief is subject to the mediation and arbitration provision and, therefore, not properly before this Court, and because this decision applies to the entirety of Plaintiff's claim, the Court grants Defendant's motion to dismiss.

### B. Defendant's Claim for Injunctive Relief

In its motion for injunctive relief, Defendant seeks to enjoin Plaintiff from: (i) "hiding or secreting any of" Defendant's property; (ii) "engaging in any conduct which would constitute a violation of his fiduciary duties as a director of [Defendant], or which constitute a breach of the Non-Compete provisions" of the Agreement; and (iii) "having any contact with any customer, partner, vendor, client, consultant or business prospect" of Defendant. Def. Mot. at 2-3 (cm/ecf

---

matter for mediation/arbitration," and requesting that "the matter be ordered to mediation and arbitration").

9

pages) (Dkt. 3). Defendant also requests that Plaintiff be required to return to Defendant "all property of [Defendant]." Id. at 2 (cm/ecf page).

Notably, Defendant's motion (Dkt. 3), its brief in support (Dkt. 4), and its reply brief (Dkt. 18) all fail to explain how Defendant's requested injunctive relief relates to sections 2, 3, 8, or 9 of the Agreement. Defendant's post-hearing supplemental brief (Dkt.42) similarly fails to adequately address this issue. In that brief, Defendant merely suggests that, even if a dispute over the ownership or possession of the technology and property was subject to the arbitration clause, "those considerations at no point relate to or control the more general, extra-contractual, duties owed by [Plaintiff] to [Defendant] as an employee/officer/director/shareholder, the breach of which duties is a significant portion of the subject matter of this litigation." Def. Supp. Br. at 9-10.

Rather, Defendant's only conceivable argument addressing this issue arose during its rebuttal to Plaintiff's closing argument in the November 2014 hearing. Defendant asserted that its requested injunctive relief relates only to sections 2 and 3 of the Agreement. 11/25/2014 Hr'g Tr. at 148-149 (Dkt. 54) (stating that sections 8 and 9 did not apply). Again, Defendant did not explain how sections 2 and 3 relate to its proposed injunction.

Insofar as sections 8 and 9 are concerned, the Court agrees with Defendant; Defendant's requested injunctive relief clearly does not relate to Defendant's use of funding or Plaintiff's responsibility for designing the machine. Thus, the Court will consider whether Defendant's requested injunctive relief relates to either section 2 or section 3 of the Agreement.

### 1. Section 2 — "Joining the Team"

Section 2 of the Agreement primarily concerns Plaintiff joining "the Team," contributing "his intellectual property and know how," and the Team working "together with respect to the

possibility of sales, marketing, manufacturing, distribution, services, and capital funding for" Defendant. Agreement at 11 (cm/ecf page). However, Defendant's requested injunction does not seek to have Plaintiff join "the Team," or have Plaintiff contribute <u>his</u> intellectual property, as opposed to Defendant seeking the return of <u>its</u> property.

Although it is conceivable that having Plaintiff and Defendant "work together" requires Plaintiff to not hide or secretly conceal any of Defendant's property, the Court resolves this vague and ambiguous language in favor of arbitration. See <u>Huffman</u>, 747 F.3d at 395. And while section 2 "recognize[s] the need to maintain the confidentiality of such information from unauthorized use and disclosure," it is section 12 of the Agreement that specifically addresses Plaintiff's responsibility not to "divulge, disclose, or communicate in any manner any information that is proprietary to [Defendant] or relates to the Technology." Agreement at 13 (cm/ecf page). Importantly, section 15 does not list section 12 as an exception permitting injunctive relief before this Court. Therefore, the Court concludes that Defendant's requested injunctive relief does not relate to section 2 of the Agreement.

### 2. Section 3 — "Noncompete Covenant"

Defendant's only colorable argument for injunctive relief before this Court concerns the Agreement's non-compete clause. Section 3 of the Agreement provides that Plaintiff "will not directly or indirectly engage in any business that competes with [Defendant] in the U.S. or worldwide" for a period of six months, or during the time Plaintiff receives a salary, and then four months after, whichever period is longer. Agreement at 11 (cm/ecf page). Notwithstanding any concerns about its geographical scope, the Court finds that the non-compete clause, by its terms, is no longer enforceable.

First, Defendant admits that Plaintiff never received a salary. See Def. Br. at 5 (Dkt. 4); Bland Aff. ¶ 22 (Dkt. 6). Thus, the second temporal condition, which pertains to a four-month period after Plaintiff stops receiving a salary, is not applicable. Second, assuming the six-month period is applicable, that time has long since expired. The Agreement had an effective date of February 16, 2013. See Agreement at 11 (cm/ecf page). This means that the non-compete clause was in effect until August 16, 2013, over a year before this litigation was even started. Thus, insofar as Defendant is attempting to enjoin Plaintiff from presently engaging in any competitive behavior, such an injunction would not relate to section 3 of the Agreement.

### C. Defendant's Remaining Tort Claims

As a final matter, Defendant contends that any tort claims against Plaintiff "are not covered by the contract arbitration clause and should remain in this Court." 11/25/2015 Hr'g Tr. at 119; Def. Supp. Br. at 9-10. Defendant fails to provide any authority in support of this argument.

In this case, the Court finds that Defendant's tort claims necessarily depend on, or relate to, a determination of ownership of the disputed property. In turn, such a determination requires interpretation of the Agreement and its enforceability. Because they arise out of or relate to the Agreement, these torts claims are subject to the Agreement's broadly worded arbitration clause. See Dobson v. Counsellors Securities, Inc., No. 94-CV-73942-DT, 1995 WL 871004, at *5 (E.D. Mich. Sept. 13, 1995) (recognizing that "[c]ourts have repeatedly held that in such cases, broadly-worded arbitration provisions to arbitrate 'any dispute' cover claims of breach of provisions of the contract, as well as a panoply of 'tort' claims arising out of the contractual relationship").

Accordingly, the Court concludes that Defendant cannot pursue injunctive relief before this Court, because the requested injunction does not relate to sections 2, 3, 8, or 9 of the Agreement, and denies Defendant's motion for injunctive relief (Dkt. 3). Having determined that all the claims in this case are arbitrable, and staying the action will serve no purpose, the Court dismisses this case without prejudice. See Bishop, 692 F. Supp. 2d at 767; Green, 2013 WL 1212775, at *4; Prude, 2008 WL 360636, at *8.

### D. Defendant's Motion to Strike Plaintiff's Supplemental Brief

After the hearing on November 24 and 25, 2014, the Court requested that the parties submit supplemental briefing. Defendant's brief was due on or before December 9, 2014; Plaintiff's brief was due on or before December 16, 2014. See 11/25/2014 Minute Entry. Although Defendant timely filed its supplemental brief, Plaintiff filed his supplemental brief two days late. See Pl. Supp. Br. (Dkt. 44) (filed on December 18, 2014). On December 19, 2014, Defendant filed a motion to strike Plaintiff's supplemental brief (Dkt. 46) as being untimely. In its motion, Defendant states that the Plaintiff's brief was filed late without seeking leave by the Court. Def. Mot. at 3.

In support of its motion, Defendant relies on Federal Rule of Civil Procedure 16. See Def. Br. at 2 (Dkt. 47). This rule provides that a "court may issue any just orders . . . if a party or its attorney fails to obey a scheduling or other pretrial order," Fed. R. Civ. P. 16(f)(1)(C) (emphasis added), including striking a pleading in whole or in part, see Fed R. Civ. P. 16(f)(1) (citing Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii)).

A district court exercises broad discretion in determining which sanctions, if any, to impose for failure to comply with a scheduling order. See Estes v. King's Daughters Med. Ctr., 59 F. App'x 749, 753 (6th Cir. 2003). In fact, "the district court has discretion to impose

13

whatever sanctions it feels appropriate, under the circumstances." Id. Although Plaintiff's supplemental brief was filed late, the Court is unable to find that Defendant is prejudiced by the two-day delay in filing. Therefore, the Court denies Defendant's motion to strike Plaintiff's supplemental brief (Dkt. 46).

### E. Defendant's Motion to Hold Plaintiff in Civil Contempt of Court

On April 13, 2015, Defendant filed a motion to hold Plaintiff in civil contempt of court (Dkt. 59). Because the Court would not be aided by oral argument, Defendant's motion will be decided based on the parties' briefing. See E.D. Mich. L.R. 7.1(f)(2).

There is a basic proposition that "all orders and judgments of courts must be complied with promptly," N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585, 590 (6th Cir. 1987), and "civil contempt may be either intended to coerce future compliance with a court's order, or to compensate for the injuries resulting from the noncompliance[,]" Glover v. Johnson, 199 F.3d 310, 313 (6th Cir. 1999) (citations omitted). In seeking to hold Plaintiff in civil contempt, Defendant has the burden of establishing by clear and convincing evidence that Plaintiff "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." M & C Corp. v. Erwin Behr EmbH & Co., 289 F. App'x 927, 935 (6th Cir. 2008) (quotation marks omitted). Any ambiguities in the Court's prior order must be resolved "in favor of the party charged with contempt." Id. (quotation marks omitted). Moreover, good faith is not a defense in civil contempt proceedings. Gnesys, Inc. v. Greene, 437 F.3d 482, 493 (6th Cir. 2005). Nor is willfulness an element of civil contempt. Id. ("[T]he state of mind of the contemnor is relevant only in consideration of sanctions.").

14

Here, there is no dispute that there was a definite and specific court order, and that Plaintiff had knowledge of that order. The critical language of the stipulated TRO provides that the parties "are restrained from damaging, destroying, concealing, disposing of, or using so as to substantially impair the value of the property[.]" 10/10/2014 Stip. Order at 1 (cm/ecf page). Thus, the Court must determine whether there is clear and convincing evidence that Plaintiff violated the stipulated TRO.

In support of its motion, Defendant states that Plaintiff violated the stipulated TRO by: (i) Plaintiff sending the disputed property to OilTrap Environmental Products, Inc. ("OilTrap") in Tumwater, Washington; (ii) Plaintiff permitting the transportation of the property throughout the country, including Oklahoma; (iii) Plaintiff allowing OilTrap to use the property in demonstrations; and (iv) Plaintiff not knowing the extent to which the property is being used by OilTrap. Def. Br. at 3-4, 6-7 (cm/ecf pages). In particular, Defendant argues that the delivery and unsupervised use of the property violates the TRO. Id. at 7 (cm/ecf page).

Notably, Defendant does not argue that the property was damaged, destroyed, or disposed of. Rather, Defendant argues that Plaintiff has concealed the property. Def. Br. at 7 (cm/ecf page). This argument is undermined by the fact that Defendant knows the whereabouts of the property. Furthermore, there is no clear and convincing evidence to suggest that Plaintiff is preventing the disclosure of the property's present location. While the property may not be as close in proximity to Defendant as Defendant may wish, the Court is unable to conclude that Plaintiff has concealed the property in violation of the stipulated TRO.

Defendant also argues that OilTrap's unsupervised use of the property has substantially impaired the property's value. Id. However, aside from this conclusory assertion, Defendant has failed to explain how the use of the property has substantially impaired its value, or offer any

15

evidence to suggest that the property's value has actually been impaired. Absent clear and convincing evidence to the contrary, the Court concludes that Plaintiff has not violated the stipulated TRO. Therefore, the Court denies Defendant's motion (Dkt. 59).

### F.  Defendant's Motion for a Discovery Conference and to Commence Discovery

On April 13, 2015, Defendant also filed a motion for a discovery conference and to commence discovery (Dkt. 61). Because the Court has held that neither party can pursue injunctive relief in this matter before this Court, the Court denies Defendant's motion as moot (Dkt. 61).

### V.  CONCLUSION

For the reasons stated above, the Court denies Defendant's motion for injunctive relief (Dkt. 3), grants Defendant's motion to dismiss (Dkt. 12), denies Defendant's motion to strike Plaintiff's supplemental brief (Dkt. 46), denies Defendant's motion to hold Plaintiff in contempt of court (Dkt. 59), and denies Defendant's motion to conduct a discovery conference and commence discovery (Dkt. 61) as moot. Accordingly, the Court dismisses this case without prejudice.

SO ORDERED.

Dated:  April 29, 2015  s/Mark A. Goldsmith
    Detroit, Michigan  MARK A. GOLDSMITH
    United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 29, 2015.

    s/Johnetta M. Curry-Williams
    Case Manager